UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

In Re:

PRIMROSE CANDY CO.

Debtor.
_______________________________________/

Case No. 26-01430
Chapter 11
Hon. Jacqueline P. Cox

**FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND PROVIDING ADEQUATE PROTECTION TO PATHWARD, NATIONAL ASSOCIATION**

The Debtor and Debtor in Possession, Primrose Candy Co., an Illinois corporation (the "Debtor"), having filed its Motion For Authority to Obtain Post-Petition Secured Financing, to Use Cash Collateral and For Related Relief pursuant to Sections 363 and 364 of the Bankruptcy Code; the Debtor having contacted Pathward, National Association, as successor to Crestmark, a division of MetaBank, National Association (the "Bank"), regarding an immediate need of funding and to use cash collateral to continue operations during its Chapter 11 bankruptcy proceeding; the Bank having agreed to provide the necessary funding and the use of its cash collateral upon the conditions set forth below; proper notice having been provided; this Court being fully advised in the premises; and THE DEBTOR AND THE BANK HAVING STIPULATED AND AGREED AS FOLLOWS:

A. On January 27, 2026 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of Title 11 of the United States Code Sec. 101 *et seq* (the "Code"). Since that time, the Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B. On the Petition Date, the Debtor filed its *Motion for Authority to Obtain Post-Petition Secured Financing, To Use Cash Collateral, for Shortened Notice and for Related Relief* [Dkt #7] (the "Motion"). The Court entered its *Interim Order Authorizing Interim Post-Petition Secured Financing, Use of Cash Collateral, Shortening Notice and Granting Related Relief* on February 3, 2026 (the "Interim Order") [Dkt #24].

C. The Bank previously entered into financing arrangements with the Debtor pursuant to, among others, the following documents (collectively the "Pre-Petition Loan Documents"):

1. An *Amended and Restated Promissory Note (Line of Credit)* dated November 8, 2021 in the stated principal amount of $7,500,000 (the "Line of Credit Note");

2. A *Loan and Security Agreement* and a *Schedule to Loan and Security Agreement* each dated February 24, 2021, as amended by *Amendment to Loan and Security Agreement* dated as of November 8, 2021, by *Amendment No. 2 to Loan and Security Agreement* dated as of September 18, 2024, and by *Amendment No. 3 to Loan and Security Agreement* dated as of December 3, 2024 (collectively the "Loan Agreement");

4. A UCC-1 Financing Statement covering all assets of the Debtor was recorded on February 24, 2021 with the Illinois Secretary of State, Filing Number 26996120.

D. All capitalized terms not defined herein shall have the meaning given to such terms in the Pre-Petition Loan Documents.

E. As of January 27, 2026, the Debtor was indebted to the Bank in the approximate principal amount of $5,200,000.00, plus interest, fees and costs allowed under the Pre-Petition Loan Documents (the "Pre-Petition Indebtedness").

F. The Debtor stipulates that Pre-Petition Indebtedness constitutes the valid and binding obligations of the Debtor to the Bank and is secured by the liens and security interests in all personal property of the Debtor (the "Pre-Petition Collateral").

G. The Debtor stipulates that the value of the Pre-Petition Collateral as of the Petition Date is at least equal to the amount of the Pre-Petition Indebtedness and, therefore, the Bank is fully secured.

H. The Pre-Petition Loan Documents provide for the Bank's dominion of funds of the Debtor and the Debtor's rights in or authority to use the cash receipts generated in its business operations requires an order of the Court or the agreement of the Bank.

I. To continue the operation of its business during the Chapter 11 reorganization process, the Debtor represents that it must use cash collateral and obtain secured financing from the Bank under the terms of the Pre-Petition Loan Documents as modified herein to pay post-petition obligations incurred by the Debtor in the ordinary course of its business.

J. The Debtor urgently requires financing under Section 364 of the Code to fund daily operations. The Debtor's inability to fund daily operations could result in a long-term negative impact on the value of the Debtor's assets and its ability to reorganize to the prejudice and detriment of the Debtor and its creditors, customers and employees.

K. The Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Bank as provided in this Order pursuant to Section 364(d) of the Code.

L. Good cause has been shown for entry of this Order. Among other things, the entry of this Order will minimize disruption of the Debtor's business as a going concern and will increase the possibility of a successful rehabilitation, and, therefore, is in the best interest of the Debtor, the bankruptcy estate, and its creditors.

M. The terms of this Order and the financing contemplated herein have been negotiated at arms-length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in Section 364(e) of the Code. Accordingly, the Bank in making advances pursuant to this Order is entitled to the protection subscribed in Section 364(e) of the Code.

N. This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157 and this Court has jurisdiction over this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1. The Motion be, and hereby is, granted to the extent set forth below.

**SECTION 1: PRE-PETITION LOAN DOCUMENTS**

1.1 Subject to the rights of the any party in interest as set forth in paragraph 3.15, the Pre-Petition Indebtedness constitutes valid and binding obligations of the Debtor to the Bank, which is secured by all personal property of the Debtor, which liens and security interests are valid and properly perfected. Such liens shall continue pursuant to Section 552(b) of the Code.

1.2. The Debtor shall not allege or pursue against the Bank any defenses, affirmative defenses, counterclaims, claims, causes of action, set-offs, or other rights, whether known or unknown, that the Debtor may have or had at any time up to and including the date of entry of this Order, to contest the authenticity, validity, or enforceability of the Pre-Petition Loan Documents, the security interests, or other liens of the Bank, or any other matter connected with the Bank's collateral or the existence and payment of the Pre-Petition Indebtedness. . The provisions of this paragraph do not impair the rights of any party in interest as set forth in paragraph 3.15.

1.3 The Bank, and its officers, directors, employees, attorneys, stockholders, agents successors and assigns, are hereby released, by the Debtor from all liabilities, claims, causes of action, allegations, or assertions, known or unknown, that they may have or had at any time up to and including the date of entry of this Order, with respect to the Bank's actions or omissions with respect to the Debtor. The provisions of this paragraph do not impair the rights of any party in interest as set forth in paragraph 3.15.

1.4 Subject to the rights of the any party in interest as set forth in paragraph 3.15, the Pre-Petition Loan Documents are incorporated herein by reference and shall be construed and considered as post-petition agreements between the Debtor and the Bank under this Order (except to the extent inconsistent herewith or modified hereby). The Bank shall continue to have dominion over all funds and the Debtor has no right or authority to use cash collateral and receipts generated in its business operations except as provided in this Order or as agreed to by the Bank, or as determined by the Court subject to further hearing.

1.5 The Debtor is hereby authorized to use cash collateral and to borrow money and seek other financial accommodations from the Bank and is ordered to perform its obligations hereunder in accordance with the terms hereof. All loans and obligations incurred on or after the petition date by the Debtor to the Bank pursuant to this Order are referred to as the "DIP Indebtedness" and, together with the Pre-Petition Indebtedness, as the "Indebtedness". All loans advanced hereunder will be deemed to be additional loans under the Pre-Petition Loan Documents, subject to the rights and priorities provided herein, and will be advanced by the Bank to the Debtor as provided in the Pre-Petition Loan Documents. Upon entry of this Order, the Debtor shall be deemed to have unconditionally promised to pay on a secured post-petition basis all Indebtedness.

**SECTION 2: LOAN AUTHORIZATIONS**

2.1 The Debtor is hereby authorized to use cash collateral and to borrow from the Bank pursuant to the terms and conditions of the Pre-Petition Loan Documents as modified herein (the "Funding").

2.2. All proceeds and collections of the Pre-Petition Collateral and the DIP Collateral (as hereinafter defined), including the proceeds and collections of the receivables pledged to the Bank under the Interim Order and the proceeds of any sale of the Pre-Petition Collateral and the DIP Collateral, must be forwarded to the Blocked Account at the Bank. **The Bank is hereby authorized to notify all Account**

**Debtors, and all Account Debtors are directed to make, all payments to the Blocked Account. In addition, all of the Debtor's invoices must be marked to show that the payments must be made to the Bank at the Blocked Account. The Bank is authorized to make account debtor verification and collection calls, and in the event of a default by the Debtor to institute collection action if necessary.**

The proceeds of each Account (including those with respect to the Interim Order) that the Bank collects will be applied as follows:

(a) first, to the Bank in an amount equal to the Advance on that Account whether such Advance occurred prior to or after the Petition Date;

(b) then to interest subject to the Minimum Loan Balance;

(c) then, to the Loan Fee;

(d) then to the Bank to pay any expenses the Debtor owes to the Bank (subject only to a final, non-appealable Order that the expenses incurred and paid were unreasonable). If requested, the Bank will provide the Debtor, the United States Trustee or any party in interest copies of all its legal invoices and a breakdown of the other Bank Expenses (as defined below); and

(e) last, unless the Bank elects to withhold all or part of the funds in a reserve for repayment of questionable Accounts or unless there is an Event of Default (as defined herein), to the Debtor.

2.3. Provided that the Debtor complies with the requirements of the Pre-Petition Loan Documents and that the Indebtedness does not exceed the Advance Formula, the Bank may make Advances to the Debtor based on the Advance Formula. The Advance Formula under paragraph 2 of Loan Agreement and Schedule is amended to read as follows:

The Loan Amount may not exceed an amount which is the lesser of:

(a) Seven Million Five Hundred Thousand and 00/100 Dollars ($7,500,000.00) ("Maximum Amount"); or

(b) The sum of:

(i) Eighty-five percent (85%) of Eligible Accounts, PLUS
(ii) the lesser of Two Million and 00/100 Dollars ($2,000,000.00), fifty percent (50%) of Eligible Inventory, or one hundred percent (100%) of (b)(i) above, PLUS
(iii) The lesser of Two Million Five Hundred Thousand Dollars ($2,500,000.00) or eighty percent (80%) of the Marketable Securities pledged to Pathward and subject to control agreements acceptable to Pathward in its sole discretion.

(subparagraphs (i) – (iii) are collectively the "Advance Formula").

"Marketable Securities" mean Investment Property that is (A) freely tradable on an established securities market without restriction, including any restrictions or

limitations as to time or volume, but excluding, for the avoidance of doubt, securities of the Debtor or its successor and (B) held in (i) that certain securities account at BMO Harris in the name of the Debtor identified as account number 000001459839, and (ii) that certain securities account at Mesirow Financial Investment Management, Inc. in the name of the Debtor identified as account number WMT001549.

The Debtor, with the consent of the Bank, is authorized to draw upon the Marketable Securities prior to the Termination Date in an amount not to exceed $250,000 (in addition to the $250,000 drawn under the Interim Order) for a total amount of $500,000, to the extent such funds are necessary to cover expenditures of the Debtor.

2.4 Until there is an Event of Default by the Debtor as defined below, the Bank shall charge interest at the non-default rates set forth in the Note. As incurred, the Bank shall be entitled to recover all of its reasonable out of pocket expenses ("Bank Expenses"), including reasonable consultants, attorneys and paralegal fees, costs and expenses, incurred in connection with the Indebtedness, subject only to a final, non-appealable order that the fees and expenses incurred and paid were unreasonable. If requested, the Bank will provide the Debtor, the United States Trustee and any party in interest, copies of all its legal invoices and a breakdown of the other Bank Expenses. All other terms and conditions of the Pre-Petition Loan Document shall remain effective.

**SECTION 3: ADEQUATE PROTECTION**

3.1 To secure the DIP Indebtedness, and as adequate protection for and to protect the Bank against any diminution in the value of the Pre-Petition Collateral, the Bank is hereby granted, pursuant to Section 364(c)(2) and 364(c)(3) of the Code, a replacement lien on the Debtor's personal property of any kind and nature whatsoever, whether now owned or hereafter acquired by the Debtor, and all proceeds, rents or profits thereof, on the same type of property on which the Bank had a lien as of the Petition Date and with the same level of priority subject to all existing, valid prior liens (collectively, the "DIP Collateral"). **Notwithstanding anything contained herein to the contrary, this Order does not afford the Bank a security interest in any Chapter 5 causes of action.**

3.2 All liens and security interests in the DIP Collateral granted to the Bank by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although the Bank may, in its sole discretion, and at the Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

3.3 In consideration of the Funding, the Debtor hereby irrevocably waives and is barred from asserting or exercising any right, without (a) prior order of the Court, (b) the Bank's prior written consent, or (c) prior payment and satisfaction in full of the Indebtedness, to (i) grant or impose, under Section 364 of the Code or otherwise, senior or equal liens on or security interests in any DIP Collateral; or (ii) modify or affect any of the rights of the Bank under this Order.

3.4 The DIP Indebtedness shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration, including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Code or otherwise (whether incurred in this case, any conversion of this case pursuant to Section 1112 of the Code, or in any other proceedings related hereto or thereto). **Notwithstanding anything contained herein to the contrary, the provisions of this paragraph do not afford the Bank a security interest in any Chapter 5 causes of action**.

Nothing in this Order constitutes the Bank's consent to a Section 506(c) surcharge.

**Notwithstanding the foregoing, the Bank's liens on and security interests in the DIP Collateral and the Bank's administrative claims under Section 364(c)(1) of the Bankruptcy Code shall be subject to the payment of any unpaid fees payable pursuant to 28 U.S.C. §1930, any unpaid fees payable to the Clerk of this Court or the United States Trustee.**

3.5 All collections and proceeds of any Pre-Petition or DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of the Debtor, or to which the Debtor shall become entitled to at any time ("Post-Petition Collections") shall be deposited or forwarded into the Blocked Account with the Bank, and subject to the rights of the any party in interest as set forth in paragraph 3.15 shall be applied to the Indebtedness. All banks, credit unions or other financial institutions in which any lockboxes and blocked accounts of the Debtor exist are authorized and directed to comply with any request of the Bank to turn over to the Bank all funds therein, or collected after the Petition Date, without offset or deduction of any kind.

3.6 The Debtor shall permit the Bank and any authorized representatives designated by the Bank, including auditors and appraisers engaged by the Bank, reasonable access to visit and inspect any of the properties of the Debtor during normal business hours and reasonable notice, to review the Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Debtor's affairs, finances and business with the Debtor's officers, consultants, and accountants. Without limiting the generality of the foregoing, the Debtor shall promptly provide to the Bank and its designated representatives any information or data reasonably requested to monitor the Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any personal property of the Debtor.

3.7 Except as ordered by the Court or as the Bank may consent, the terms of this Order shall not be modified by any order (including any confirmation order) or by any plan of reorganization in this case or any subsequent case under the Code.

3.8 The Bank has no commitment to provide funding beyond (i) the occurrence of an Event of Default; or (ii) the Termination Date (as hereinafter defined), provided that the Debtor retains the right to seek to use cash collateral without the consent of the Bank pursuant to an order of this Court.

3.9 The rights and obligations of the Debtor and the rights, claims, liens, security interests and priorities of the Bank arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor pre-petition under the Pre-Petition Loan Documents.

3.10 The provisions of this Order shall be binding upon and inure to the benefit of the Bank, the Debtor and its respective successors and assigns, including any trustees of the Debtor in Chapter 11 or Chapter 7.

3.11 If this case is dismissed, the Bank's rights and remedies under this Order and under the Pre-Petition Loan Documents shall remain in full force and effect.

3.12 The Debtor hereby waives any and all defenses (including, without limitation, offsets and counterclaims of any nature and kind) as to the validity, perfection, priority, enforceability and non-avoidability (under Sections 510, 544, 545, 547, 548, 550, 552, 553 of the Code or otherwise) of the Pre-

Petition Indebtedness and the security interests in and liens on the Pre-Petition Collateral in favor of the Bank (which liens and security interests are first priority subject only to the liens granted herein).

3.13 Subject to the rights of the any party in interest as set forth in paragraph 3.15, this Court has considered and determined the matters addressed herein pursuant to its powers under the Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and the Bank have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Code, and is, therefore, subject to the protections contained in Section 364(e) of the Code except as otherwise provided herein.

3.14 The Debtor, at its expense, shall (a) continue to keep all collateral insured to its maximum insurable value against all loss, peril and hazard and name the Bank as lender's loss payable under such policies; and (b) pay any and all post-petition taxes, assessment and governmental charges, except to the extent such are being contested in good faith by appropriate proceedings and the Debtor maintains appropriate cash reserves for the expenses being contested, and provide the Bank with proof of the foregoing within 3 days of payment. Copies of all federal tax returns, federal tax deposits and other payments made by the Debtor during the pendency of this Order shall be timely mailed to the Bank.

3.15 Notwithstanding anything contained herein to the contrary, when a provision of this Order is qualified by the phrase "Subject to the rights of the any party in interest as set forth in paragraph 3.15", it shall mean that the specific finding shall not be binding on any party other than the Debtor, and parties other than the Debtor shall have 30 days from the date this Order is entered to investigate and file a written objection to such finding. If an action is timely filed, nothing in this Order shall bar or preclude the Court from granting any appropriate relief.

## SECTION 4: COVENANTS AND REPORTING REQUIREMENTS

4.1 The Debtor shall comply with all covenants and maintain all formulas contained in the Pre-Petition Loan Documents.

4.2 The Debtor will promptly give the Bank prior written notice of the occurrence of any event or any matter which has resulted or will result in a material adverse change in its business, assets, operations or financial condition.

4.3. The Debtor shall deliver to the Bank concurrently with their filing, copies of each report filed with the Office of the United States Trustee if not also filed with the court.

4.4 The Bank shall be entitled to obtain current title searches and phase 1 environmental assessments, at the Debtor's cost and expense, for the real properties located at 4020-4042 W. Schubert, Chicago, Illinois, and at 411 W. Parker Ave., Chicago, Illinois.

## SECTION 5: DEFAULT, RIGHTS AND REMEDIES OF THE BANK AND SERVICE

5.1 Each of the following events shall constitute an event of default (an "Event of Default") hereunder:

(a) An order dismissing the case, converting the case to Chapter 7 of the Code, appointing an examiner with expanded powers or a trustee, or terminating the authority of the Debtor to conduct business;

(b) Failure of the Debtor to make any payment when due which is not cured within three business days of written notice from Pathward; or

(c) There is a default (other than payments) by the Debtor under this Order or the Pre-Petition Loan Documents after the petition date, which is not cured within five business days of written notice from Pathward.

5.2 Upon the Termination Date (as hereinafter defined):

(a) The entire Indebtedness remaining unpaid at the election of the Bank shall become due; and
(b) The Debtor's authority to use cash collateral shall cease, the Bank may file a motion for relief from the automatic stay, and the Debtor may file a motion for authority to use cash collateral which the Court will hear on an expedited basis.

"Termination Date" shall mean the earlier of an Event of Default or July 1, 2026. The Debtor and the Bank may agree to extend the Termination Date without further order of the Court, provided, the Bank shall have no obligation to do so.

5.3 The Bank shall have no obligation to advance any funds to the Debtor unless and until:

(a) The Debtor has executed such additional loan documents as the Bank may reasonably request; and
(b) The Debtor has complied with all the terms and conditions of the Pre-Petition Loan Documents.

**SECTION 6: OTHER RIGHTS, OBLIGATIONS AND PROVISIONS**

6.1 Subject to the rights of the any party in interest as set forth in paragraph 3.15, the Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements that the Bank may reasonably require and/or which may otherwise be deemed reasonably necessary by the Bank to effectuate the terms and conditions of this Order, including, without limitation, such documents as the Bank may deem reasonably necessary to correct defects in title and like matters.

6.2 No delay or failure to exercise any right, power or remedy accruing to the Bank upon breach or default by the Debtor under this Order or any document or agreement shall impair any such right, power or remedy of the Bank nor shall it be construed to be a waiver of any such breach or default, nor of any breach or default theretofore or thereafter occurring, nor an acquiescence therein.

6.3 Consent to this Order may be given by counterparts and/or facsimile signatures.

**APPROVED AS TO FORM AND SUBSTANCE:**

| | |
|---|---|
| **PATHWARD NATIONAL ASSOCIATION** | **PRIMROSE CANDY CO.** |
| /S/ Kimberly Ross Clayson<br>Kimberly Ross Clayson (MI P69804)<br>Taft Stettinius & Hollister LLP<br>27777 Franklin Road, Suite 2500<br>Southfield, MI 48034<br>(248) 351-3000 | /s/ David K. Welch<br>David K. Welch (Atty No. 06183621)<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 N. Wabash Ave., 21st Floor<br>Chicago, IL 60611<br>(312) 840-7122 |
| Dated: February ___, 2026 | Dated: February __, 2026 |
| *Counsel for Creditor, Pathward National Association* | *Counsel for the Debtor, Primrose Candy Co.* |